[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Walker v. Toledo,* **Slip Opinion No. 2014-Ohio-5461.**]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-5461

WALKER, APPELLEE, *v.* THE CITY OF TOLEDO ET AL., APPELLANTS.

[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Walker v. Toledo,* **Slip Opinion No. 2014-Ohio-5461.**]

*Municipalities have home-rule authority under Ohio Constitution, Article XVIII, to impose civil liability on traffic violators through an administrative enforcement system—Ohio Constitution, Article IV, Section 1 and R.C. 1901.20 do not endow municipal courts with exclusive authority over traffic-ordinance violations—Municipalities have home-rule authority to establish administrative proceedings, including administrative hearings, in furtherance of traffic ordinances, that must be exhausted before offenders or the municipality can pursue judicial remedies.*

(No. 2013-1277—Submitted June 11, 2014—Decided December 18, 2014.)

APPEAL from the Court of Appeals for Lucas County, No.

L-12-1056, 2013-Ohio-2809.

_____

KENNEDY, J.

{¶ 1} In this discretionary appeal from the Sixth District Court of Appeals, we determine whether the court of appeals erred in holding that the city

of Toledo's civil administrative enforcement of its traffic ordinances violates Article IV, Section 1 of the Ohio Constitution. We accepted the following propositions of law from appellant city of Toledo:

1. Neither R.C. § 1901.20 nor Ohio Constitution, Article IV, Section 1 are offended when a home rule municipality enacts, by ordinance, a civil administrative process for photo enforcement of speed and red light violation.

2. R.C. § 1901.20 does not confer exclusive jurisdiction over civil administrative violations of municipal codes to municipal courts.

{¶ 2} We also accepted a proposition of law from appellant Redflex Traffic Systems, Inc., which asserts: "Ohio municipalities have the home-rule authority to maintain pre-suit administrative proceedings, including conducting administrative hearings, in furtherance of their civil traffic enforcement ordinances."

{¶ 3} We reaffirm our holding in *Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, that municipalities have home-rule authority under Article XVIII of the Ohio Constitution to impose civil liability on traffic violators through an administrative enforcement system. We also hold that Ohio Constitution, Article IV, Section 1, which authorizes the legislature to create municipal courts, and R.C. 1901.20, which sets the jurisdiction of municipal courts, do not endow municipal courts with exclusive authority over civil administrative enforcement of traffic-law violations. Finally, we hold that Ohio municipalities have home-rule authority to establish administrative proceedings, including administrative hearings, related to civil enforcement of traffic ordinances, and that these administrative proceedings must be exhausted before

offenders or the municipality can pursue judicial remedies. We therefore reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings consistent with this opinion.

I. Facts and Procedural History

{¶ 4} This case comes to us as an appeal from the court of appeals' reversal of the trial court's dismissal of a complaint pursuant to Civ.R. 12(B)(6). "In construing a complaint upon a motion to dismiss for failure to state a claim, we must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). Therefore, the facts are accepted as true as presented in appellee's complaint.

{¶ 5} In 2008, the city of Toledo enacted Toledo Municipal Code ("TMC") 313.12, authorizing an automated traffic-law-enforcement system that assesses civil penalties against a vehicle's owner for speeding and red-light violations. The enforcement apparatus includes a camera and a vehicle sensor and automatically produces photos, video, or digital images of vehicles violating these traffic laws. TMC 313.12(b)(1). Redflex Traffic Systems, Inc., provides the equipment and shares the revenue with Toledo.

{¶ 6} Toledo transportation officials, as well as Toledo's police and law departments, administer the program. TMC 313.12(a)(2). When the Redflex equipment records a traffic violation, the city forwards a notice of liability to the vehicle's registered owner advising that a civil penalty of $120 has been assessed against him or her. TMC 313.12(a)(3)(B) and 313.12(d)(1) and (2). The notice of liability is not a criminal citation; it is a notice of civil liability and has no collateral consequences, such as the assignment of points against the owner's driver's license. TMC 313.12(c)(5) and 313.12(d)(1) and (2). The notice states that the owner must pay or file an appeal within 21 days of the date listed on the notice. TMC 313.12(a)(3)(C) and 313.12(d)(4).

**{¶ 7}** Failure to pay or appeal within that period is deemed a waiver of the right to contest liability and is considered an admission. TMC 313.12(d)(4). If an owner appeals, an administrative hearing is held, and if the owner offers evidence to show the hearing officer that he or she was not driving the vehicle when the violation occurred, the owner will not be held responsible for the violation. TMC 313.12(c)(4).

**{¶ 8}** Under TMC 313.12(d)(4), appeals are heard through an administrative process established by the Toledo police department. That provision adds that a "decision in favor of the City of Toledo may be enforced by means of a civil action or any other means provided by the Ohio Revised Code."

**{¶ 9}** R.C. 2506.01 provides the mechanism for further appeal. It states, "[E]very * * * decision of any officer * * * of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located."

**{¶ 10}** Bradley Walker, appellee, received a notice of liability for a traffic violation under TMC 313.12, and he paid the city $120, without pursuing an administrative appeal. He then filed a class-action complaint against Toledo and Redflex for unjust enrichment, seeking their disgorgement of all civil penalties. The complaint asserted that TMC 313.12 is unconstitutional because it usurps the jurisdiction of the municipal court, is unconstitutionally vague, and violates due process. Appellants filed motions to dismiss for failure to state a claim for which relief can be granted pursuant to Civ.R. 12(B)(6), which the trial court granted.

**{¶ 11}** Walker appealed, and in a split decision, the Sixth District Court of Appeals reversed, holding that TMC 313.12 is an unconstitutional violation of Article IV, Section 1 of the Ohio Constitution ("The judicial power of the state is vested in a supreme court, courts of appeals, courts of common pleas and divisions thereof, and such other courts inferior to the supreme court as may from time to time be established by law"). The court held that without the express

4

approval of the General Assembly, Toledo had divested the Toledo Municipal Court of the power granted to it by the legislature in R.C. 1901.20. That statute states that a "municipal court has jurisdiction of the violation of any ordinance of any municipal corporation within its territory."

{¶ 12} The Sixth District also held that because the case was on appeal from a trial court's granting a Civ.R. 12(B)(6) motion to dismiss, Walker's allegation in his complaint that Toledo had never established an administrative appeal process must be accepted as true. Because Walker alleged that Toledo had offered him no notice and meaningful opportunity to be heard, the court of appeals said that Walker's due-process allegation survived the motion to dismiss. Toledo and Reflex appealed on the issue whether Toledo's civil administrative enforcement of its traffic ordinances violates the Ohio Constitution or R.C. 1901.20, and we accepted jurisdiction.

II. Legal Analysis

**A.** *A city's enacting an ordinance providing for civil administrative enforcement of traffic offenses does not violate the Ohio Constitution*

{¶ 13} We agree with appellants that a city's enacting an ordinance providing for a civil administrative enforcement of traffic laws does not offend R.C. 1901.20 or Ohio Constitution, Article IV, Section 1. We have already held that municipalities act within their constitutional home-rule powers when they establish automated systems for imposing civil liability on traffic-law violators. *Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, syllabus. Walker invokes R.C. 1901.20 and Ohio Constitution, Article IV, Section 1 to assert that TMC 313.12 impairs the Toledo Municipal Court's constitutionally protected jurisdiction over violations of local ordinances. However, this argument is inconsistent with our holding in *Mendenhall* and does not cause us to reconsider it.

**{¶ 14}** The facts of *Mendenhall* are instructive. After a child was killed in a hit-and-run accident in a school crosswalk, Akron passed an ordinance implementing an "automated mobile speed enforcement system." *Id*. at ¶ 4. According to the Akron City Council, the statute's purpose was to " 'assist the Akron Police Department by alleviating the need for conducting extensive conventional traffic enforcement in and around school zones.' " *Id*. at ¶ 5. The ordinance created a system that was purely civil in nature and did not modify any state speed limits. *Id*. at ¶ 6. Violators received notices of civil liability and could pay the civil fines or pursue an administrative appeal. *Id*. at ¶ 7-8. Kelly Mendenhall received a notice of liability for speeding, which was dismissed on administrative appeal. *Id*. at ¶ 10. Like Walker, Mendenhall filed a class-action suit against the municipality for a declaratory judgment, an injunction, and a monetary award. *Id*. at ¶ 11. Mendenhall asserted that the Akron ordinance conflicted with Ohio's general laws regulating traffic, thereby exceeding Akron's home-rule authority and violating due process. *Id*. at ¶ 9.

**{¶ 15}** The case was removed to federal court. *Id*. at ¶ 11. The United States District Court for the Northern District of Ohio, Eastern Division, then certified to us the following issue pursuant to S.Ct.Prac.R. XVIII (now S.Ct.Prac.R. 9.01): "Whether a municipality has the power under home rule to enact civil penalties for the offense of violating a traffic signal light or for the offense of speeding, both of which are criminal offenses under the Ohio Revised Code." *Id*. at ¶ 2.

**{¶ 16}** After examining this question, we issued "a written opinion stating the law governing the question or questions certified." S.Ct.Prac.R. 9.08. We first analyzed a municipality's powers granted under Ohio Constitution, Article XVIII, Section 3. It states, "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with

6

general laws. " Section 7 of Article XVIII complements Section 3. It states, "Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government."

{¶ 17} We then concluded: "[Akron's] ordinance provides for a complementary system of civil enforcement that, rather than decriminalizing behavior, allows for the administrative citation of vehicle owners under specific circumstances. Akron has acted within its home rule authority granted by the Constitution of Ohio." *Id*. at ¶ 42. We therefore reject Walker's claim that in creating a civil administrative traffic-law-enforcement system that is similar to the system set forth in the Akron ordinance at issue in *Mendenhall*, Toledo has unconstitutionally usurped the General Assembly's exclusive power to create courts under Article IV, Section 1 of the Ohio Constitution.

{¶ 18} Walker nevertheless counters that Article XVIII, Sections 3 and 7 of the Ohio Constitution do not authorize home-rule power in the area of administrative review of civil liability for traffic-law offenses unless the General Assembly specifically authorizes such administrative processes through statute. The Sixth District Court of Appeals found this point persuasive and noted that while many local boards review municipal-ordinance violations, "most" of them do so under specific enabling authority from the General Assembly, and not under Ohio Constitution, Article XVIII alone. 2013-Ohio-2809, 994 N.E.2d 467, ¶ 35 (6th Dist.). Appellants concede that the General Assembly has not enacted statutes specifically authorizing municipalities to adopt civil traffic-law-enforcement ordinances.

{¶ 19} As Redflex emphasizes, however, "most" is not all. Municipal taxi-cab review boards set licensing requirements, hold hearings, and review violations without specific statutory authority. Redflex notes that Columbus has a "refuse-collection code," Columbus City Code Title 13, that the Revised Code

does not authorize but that has provisions similar to TMC 313.12 in that it provides for sending notices of violation when residents and businesses are not in compliance with the city's refuse ordinances and sets out an appeal process in which a board hears appeals. Columbus City Code 1303.05 and 1303.10. Furthermore, the fact that the General Assembly enacted R.C. 2506.01, which provides for appeals from local administrative decisions, supports appellants' claim that charter cities have constitutional and legislative authority to self-govern in these ways under their home-rule authority. *See Bazell v. Cincinnati*, 13 Ohio St.2d 63, 233 N.E.2d 864 (1968), paragraph one of the syllabus.

**{¶ 20}** Walker additionally claims that TMC 313.12 violates the separation-of-powers doctrine implicitly embedded in the framework of the Ohio Constitution because the municipality has taken over a judicial function bestowed exclusively on the municipal courts by R.C. 1901.20 and Ohio Constitution, Article IV, Section 1. We acknowledge that home-rule authority "does not include the power to regulate the jurisdiction of courts." *Cupps v. Toledo*, 170 Ohio St. 144, 163 N.E.2d 384 (1959), paragraph one of the syllabus.

**{¶ 21}** However, as noted above, the reality of municipal civil enforcement of ordinances does not involve regulating the jurisdiction of courts. As we made clear in *Mendenhall*, civil enforcement of municipal ordinances complements the work of the courts. It does not restrict it. *Id*. at ¶ 42. Neither R.C. 1901.20 nor Ohio Constitution, Article IV, Section 1 undermines our analysis in *Mendenhall*. We therefore reaffirm that Ohio Constitution, Article XVIII, Sections 3 and 7 grant municipalities the authority to protect the safety and well-being of their citizens by establishing automated systems for imposing civil liability on traffic-law violators. *Mendenhall* is dispositive on the constitutionality of municipalities' civil administrative processes for enforcement of red-light and speeding violations captured by automated systems.

***B. R.C. 1901.20 does not confer exclusive jurisdiction over traffic-ordinance violations on municipal courts***

{¶ 22} We also agree with Toledo and Redflex that the Sixth District Court of Appeals misinterpreted R.C. 1901.20 in holding that it gives municipal courts exclusive authority over traffic-ordinance violations. Walker argues, and the Sixth District held, that the term "any" in R.C. 1901.20 means "every" and "all": "The municipal court has jurisdiction of the violation of *any* ordinance of any municipal corporation within its territory" except certain noncriminal parking violations that are handled by another bureau. (Emphasis added.) Therefore, he asserts, the Toledo Municipal Court must have exclusive authority over the notices of liability issued under TMC 313.12.

{¶ 23} We disagree. First, as discussed above, we have expressly held that Akron's civil traffic-law-enforcement ordinance (which is substantially similar to Toledo's) "complements rather than conflicts with state law." *Mendenhall*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, ¶ 37. Consequently, reading R.C. 1901.20(A)(1) as prohibiting civil enforcement of traffic ordinances under home-rule authority would require us to overrule *Mendenhall*.

{¶ 24} Consistent with *Mendenhall*, therefore, we agree with the dissenting opinion in the court of appeals in this case that no rule of statutory construction compels us to find that "any," as used in R.C. 1901.20(A)(1), is synonymous with "exclusive." *Webster's Third New International Dictionary* 97 (2002) does not list "exclusive" as a synonym of "any." Instead, it defines "any" as "one indifferently out of more than two"; "every"; and "one or some of whatever kind," and the like. The same source defines "exclusive" as "having power to exclude"; "limiting or limited to possession, control, or use"; "single, sole." Neither term appears in the definition of the other. *Id*. at 97 and 793.

**{¶ 25}** Furthermore, the General Assembly does not use "any" and "exclusive" interchangeably. *See, e.g.*, R.C. 2743.02(F) (court of claims has "exclusive, original jurisdiction to determine" personal-immunity issues of certain defendants; R.C. 3781.20(B) (a certified local board of building appeals has "exclusive jurisdiction" over rulings of the local chief enforcement official); R.C. 1901.181(A)(1) (housing division of municipal court has "exclusive jurisdiction" in a civil action to enforce local building code). "When the General Assembly intends to vest exclusive jurisdiction in a court or agency, it provides it by appropriate statutory language." *State ex rel. Banc One Corp. v. Walker*, 86 Ohio St.3d 169, 171-172, 712 N.E.2d 742 (1999). The Revised Code, *Mendenhall*, and other caselaw support appellants in their assertion that R.C. 1901.20(A)(1) allows complementary civil enforcement of traffic laws. R.C. 1901.20 does not confer exclusive jurisdiction over civil traffic-law violations on municipal courts.

### C. *Ohio municipalities have home-rule authority to establish presuit civil administrative proceedings in furtherance of their traffic-law enforcement ordinances*

**{¶ 26}** Consistent with our disposition of Toledo's two propositions of law, we agree with Redflex's proposition that municipalities have home-rule authority to establish presuit civil administrative proceedings, including administrative hearings, on civil liability for traffic-law violations.

**{¶ 27}** In deciding otherwise, the court of appeals made much of our statement in *Mendenhall* that "there are due process questions regarding the operation of the Akron Ordinance and those similar to it," but that "those questions are not appropriately before us at this time and will not be discussed here." *Mendenhall*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, ¶ 40. 2013-Ohio-2809, 994 N.E.2d 467, ¶ 13. The court of appeals found this language to be "an express limitation on the scope of the *Mendenhall* decision," *id*., and a

signal from this court that *Mendenhall* would have little general application, *id.* at ¶ 12.

{¶ 28} The court of appeals misread *Mendenhall*. Our holding that a complementary system of civil enforcement of traffic laws is within a municipality's home-rule power acknowledges that administrative procedures must be established in furtherance of this power. See, for example, our discussion of Akron's ordinance, which sets forth civil administrative-appeal proceedings, which appear to be almost identical to Toledo's. *Mendenhall* at ¶ 6-8. *See also State ex rel. Scott v. Cleveland*, 112 Ohio St.3d 324, 2006-Ohio-6573, 859 N.E.2d 923, ¶ 24 (Cleveland's administrative disposition of civil traffic-law-violation liability was "an adequate remedy in the ordinary course of law by way of the administrative proceedings"). As Walker has brought nothing to our attention to show that Toledo's administrative proceedings are inconsistent with home-rule authority as sanctioned by this court in other cases, we must agree with Redflex that Toledo's administrative-enforcement proceedings are appropriate.

III. Conclusion

{¶ 29} Based on the foregoing, we reaffirm our holding in *Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, that municipalities have home-rule authority under Ohio Constitution, Article XVIII, to impose civil liability on traffic violators through an administrative enforcement system. We also hold that Ohio Constitution, Article IV, Section 1, which authorizes the legislature to create municipal courts, and R.C. 1901.20, which sets the jurisdiction of municipal courts, do not endow municipal courts with exclusive authority over traffic-ordinance violations. Finally, we hold that Ohio municipalities have home-rule authority to establish administrative proceedings, including administrative hearings, in furtherance of these ordinances, that must be exhausted before offenders or the municipality can pursue judicial remedies. We therefore reverse the judgment of the court of appeals with regard to its holding

that the ordinance infringes upon the jurisdiction of the municipal court, and we remand the cause to the trial court for further proceedings consistent with this opinion.

Judgment reversed.

O'CONNOR, C.J., and GWIN, and LANZINGER, JJ., concur.

PFEIFER, FRENCH, and O'NEILL, JJ., dissent.

W. SCOTT GWIN, of the Fifth Appellate District, sitting for O'DONNELL, J.

_____

**O'NEILL, J., dissenting.**

**{¶ 30}** This case can be reduced to a single narrow issue: Does a city council have the power to limit the municipal court's jurisdiction in "traffic camera" cases and confer jurisdiction on a nonelected hearing officer? The answer is a resounding *no*. As the Sixth District correctly concluded, one need only look at R.C. 1901.20(A)(1) for the answer. That statute provides:

> The municipal court has jurisdiction of the violation of *any* ordinance of any municipal corporation within its territory, *unless* the violation is required to be handled by a parking violations bureau or joint parking violations bureau pursuant to Chapter 4521. of the Revised Code, and of the violation of *any misdemeanor committed within the limits of its territory.*

(Emphasis added.)

**{¶ 31}** It is evident under this statute that the General Assembly has vested the municipal court with jurisdiction over the violation of *any* ordinance generally and any misdemeanor specifically, other than parking violations. The term "any ordinance" does not need interpreting. It is clear on its face. Other than the specifically mentioned parking-violation ordinances, "any ordinance"

covers "any ordinance," which includes Toledo Municipal Code ("TMC") 313.12. This is the only logical interpretation of this statute. Clearly, the legislature understands how to make exceptions to a general rule, as it did in R.C. 1901.20(A)(1) with parking violations. One principle of statutory construction is that " 'if a statute specifies one exception to a general rule or assumes to specify the effects of a certain provision, other exceptions or effects are excluded.' " *Thomas v. Freeman*, 79 Ohio St.3d 221, 224-225, 680 N.E.2d 997 (1997), quoting *Black's Law Dictionary* 581 (6th Ed.1990). Hence, the "any ordinance" language in this statute covers TMC 313.12, since there is no specific exception set forth for ordinance violations captured by traffic cameras. The Sixth District was correct when it stated:

> Toledo Municipal Code 313.12 is an ordinance of a municipal corporation within the territory encompassed by the Toledo Municipal Court and is not a parking violation; therefore, the violation of Toledo Municipal Code 313.12 is subject to the jurisdiction of the Toledo Municipal Court. Any attempt, in whole or in part, to divest the court of that jurisdiction violates the authority of the General Assembly to set the jurisdiction of the court, thus violating Ohio Constitution, Article IV, Section l.

*Walker v. Toledo*, 2013-Ohio-2809, 994 N.E.2d 467, ¶ 24 (6th Dist.).

**{¶ 32}** In this case, the Toledo City Council has divested the Toledo Municipal Court of part of its jurisdiction by vesting jurisdiction over traffic-camera cases in a hearing officer. A hearing officer is simply not a substitute for a municipal court judge who has been elected to preside over judicial matters. TMC 313.12 is a direct infringement of the municipal court's jurisdiction as well as the legislature's right to confer jurisdiction on the court and the right of the

general population to elect those empowered to determine whether laws have been violated.

**{¶ 33}** The majority bases its decision, in part, on *Mendenhall v. Akron*, 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255.  But *Mendenhall* addressed the issue of home-rule authority and the constitutionality of a municipality's imposing civil liability for traffic-law violations captured by traffic cameras.  The present case is not about home rule and does not implicate *Mendenhall*.  It is solely about the jurisdiction of the Toledo Municipal Court and whether TMC 313.12 unlawfully intrudes upon and reduces that jurisdiction.  It does.  Accordingly, I would affirm the decision of the Sixth District Court of Appeals and remand the matter to the trial court for further proceedings.

**{¶ 34}** I respectfully dissent.

PFEIFER and FRENCH, JJ., concur in the foregoing opinion.

_____

Mayle, Ray & Mayle, L.L.C., Andrew R. Mayle, Jeremiah S. Ray, and Ronald J. Mayle; and Murray & Murray Co., L.P.A., and John T. Murray, for appellee.

Adam W. Loukx, Toledo Law Director, and Eileen M. Granata; and Crabbe, Brown & James, L.L.P., Andy Douglas, Larry H. James, and Jeffrey D. Houser, for appellant city of Toledo.

Bricker & Eckler, L.L.P., Quintin F. Lindsmith, James P. Schuck, and Sommer L. Sheely, for appellant Redflex Traffic Systems, Inc.

Baker & Hostetler, L.L.P., Gregory V. Mersol, and Chris Bator; and Barbara A. Langhenry, Cleveland Director of Law, and Gary S. Singletary and John Mills, Assistant Directors of Law, urging reversal for amici curiae Xerox State & Local Solutions, Inc., and city of Cleveland.

Frost Brown Todd, L.L.C., Philip K. Hartmann, Yazan S. Ashrawi, and Stephen J. Smith; John Gotherman; Jennifer S. Gams, Assistant City Attorney,

Columbus; and John C. Musto, Assistant City Attorney, Dayton, urging reversal for amici curiae the Ohio Municipal League, the city of Columbus, and the city of Dayton.

Ronald Riley, East Cleveland Law Director; and Squire Sanders, L.L.P., Richard S. Gurbst, and F. Maximilian Czernin, urging reversal for amici curiae city of East Cleveland and American Traffic Solutions, Inc.

Richard C. Pfeiffer Jr., Columbus City Attorney, and Jennifer S. Gams and Janet Hill Arbogast, Assistant City Attorneys, urging reversal for amicus curiae city of Columbus.

Freda J. Levenson, Jennifer Martinez Atzberger, and Drew S. Dennis, urging affirmance for amicus curiae American Civil Liberties Union of Ohio Foundation.

Maurice A. Thompson, urging affirmance for amici curiae 1851 Center for Constitutional Law; State Representatives Dale Mallory, John Adams, Ron Maag, John Becker, Matt Lynch, Rick Perales, Terry Boose, Margaret Conditt, Terry Blair, Richard Adams, Bob Hacket, Peter Stautberg, Cliff Rosenberger, Mike Dovilla, Tim Derickson, Dave Hall, Alicia Reece, Louis Blessing III, Bill Patmon, Peter Beck, and John Barnes; and State Senators Kris Jordan, Shannon Jones, Joseph Uecker, Tom Patton, Jonathan Ecklund, Timothy Schaffer, and William Seitz.

_____