[Cite as *Borrow v. New Miami*, 2018-Ohio-217.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| DOREEN BARROW, et al., | : | CASE NO. CA2017-03-031 |
| Plaintiffs-Appellees, | : | |
| | : | O P I N I O N<br>1/22/2018 |
| - vs - | : | |
| | : | |
| VILLAGE OF NEW MIAMI, et al., | : | |
| Defendants-Appellants. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2013-07-2047


Engel & Martin, LLC, Joshua A. Engel, 4660 Duke Drive, Suite 101, Mason, Ohio 45040, for plaintiff-appellee, Doreen Barrow

Rittgers & Rittgers, Charles H. Rittgers, 12 East Warren Street, Lebanon, Ohio 45036, for plaintiff-appellee, Michelle Johnson

Michael K. Allen & Associates, LLC, Michael K. Allen, 810 Sycamore Street, 5th Floor, Cincinnati, Ohio 45202, for plaintiff-appellee, Don Muirheid

Markovits, Stock & DeMarco, LLC, Paul M. DeMarco, 3825 Edwards Road, Suite 650, Cincinnati, Ohio 45209, for plaintiff-appellee, Diane Woods

Rendigs, Fry, Kiely & Dennis, LLP, Felix J. Gora and James J. Englert, 600 Vine Street, Suite 2650, Cincinnati, Ohio 45202, for defendant-appellant, Village of New Miami

Rendigs, Fry, Kiely & Dennis, LLP, Anthony G. Raluy, 500 West Jefferson Street, Suite 1515, Louisville, Kentucky 40202, for defendant-appellant, Village of New Miami

**M. POWELL, J.**

{¶ 1} Defendant-appellant, the village of New Miami, Ohio ("New Miami"), appeals a decision of the Butler County Court of Common Pleas denying its motion for summary judgment seeking governmental immunity pursuant to R.C. Chapter 2744. This interlocutory appeal is limited to the issue of whether the trial court erred in denying New Miami sovereign immunity under R.C. Chapter 2744.

{¶ 2} New Miami operates a civil enforcement program to deter motorists from exceeding the speed limit at several village street intersections. The Automated Speed Enforcement Program was instituted in July 2012 with the adoption of Ordinance 1917 (hereinafter "ASEP"). If a vehicle exceeds the posted speed limit, a camera photographs the license plate and the registered owner of the vehicle receives a Notice of Liability in the mail. Pursuant to the Notice of Liability, motorists may pay the penalty, thus waiving the right to a hearing. Alternatively, motorists may request a hearing within 30 days from the date of the violation. A motorist may file an administrative appeal from the result of the hearing to the Butler County Common Pleas Court pursuant to R.C. 2506.01. Motorists who neglect to pay the penalty are subject to a late fee and are referred to a collection agency, and the judgment against them is reported to credit reporting agencies.

{¶ 3} New Miami entered into a contract with Maryland Optotraffic, LLC, to operate the program. Pursuant to the contract, the penalties are paid directly to Optotraffic which retains 40 percent of the penalties as compensation for its services in administering the program; the remaining 60 percent of the penalties is forwarded to New Miami. Since the program's inception in 2012, over three million dollars have been collected, with New Miami receiving $1,839,914.14 and Optotraffic retaining $1,226,609.41.

{¶ 4} Doreen Barrow and other similarly situated individuals ("Plaintiffs") are all motorists who were sent Notices of Liability. Some of the Plaintiffs paid the penalty and

some did not. In 2013, Plaintiffs collectively filed suit against New Miami challenging ASEP and seeking class action certification. Count 1 sought a declaration that ASEP improperly divested the municipal court of jurisdiction over traffic violations in contravention of the Ohio Constitution. Count 2 sought a declaration that ASEP violated Plaintiffs' due process rights. Count 3 prayed for injunctive relief prohibiting continued enforcement of ASEP. Finally, Count 4 sought equitable restitution of any penalties, fees, or charges ("penalties") paid by Plaintiffs pursuant to ASEP, on the ground that retention of the penalties would unjustly enrich New Miami.

{¶ 5} In March 2014, the trial court granted partial summary judgment to Plaintiffs on Counts 1, 2, and 3 and denied New Miami's motion for summary judgment. The trial court found that ASEP unlawfully divested the municipal court of jurisdiction and violated the Ohio Constitution's guarantee of "due course of law."[1] The trial court granted an injunction against continued enforcement of ASEP. Subsequently, Plaintiffs moved for summary judgment regarding their unjust enrichment/restitution claim. The trial court certified a class comprised of all persons who had received Notices of Liability under ASEP.

{¶ 6} New Miami appealed the class action certification decision. On December 30, 2014, we reversed and remanded for the trial court to clarify its Civ.R. 23 findings in support of certification. *Barrow v. New Miami*, 12th Dist. Butler No. CA2014-04-092, 2014-Ohio-5743 ("*Barrow I*"). On remand, the trial court articulated its rationale, made the requisite findings, and certified the class. New Miami once again appealed. On February 1, 2016, we affirmed the trial court's class certification. *Barrow v. New Miami*, 12th Dist. Butler No. CA2015-03-

---

1. In December 2014, the Ohio Supreme Court released *Walker v. Toledo*, 143 Ohio St.3d 420, 2014-Ohio-5461. The supreme court reaffirmed a previous holding that municipalities may, pursuant to their home-rule authority under Article XVIII of the Ohio Constitution, impose civil liability on traffic violators through the use of automated red light cameras. *Id.* at ¶ 3, 21. The court ruled that the ordinance in that case did not unlawfully usurp the jurisdiction of municipal courts over traffic violations. *Id.* at ¶ 22-25. The court further held that municipalities' home-rule authority permitted them to establish civil administrative proceedings that must be exhausted before traffic violators may pursue judicial remedies. *Id.* at ¶ 26-28.

043, 2016-Ohio-340 ("*Barrow II*").

{¶ 7} Subsequently, the parties renewed their motions for summary judgment regarding Plaintiffs' unjust enrichment/restitution claim in Count 4. New Miami argued it was immune from liability pursuant to the political subdivision immunity of R.C. Chapter 2744. On February 8, 2017, the trial court granted Plaintiffs' motion for summary judgment and denied New Miami's cross motion for summary judgment, finding that New Miami was not entitled to sovereign immunity under R.C. Chapter 2744 because Plaintiffs' unjust enrichment/restitution claim was an equitable claim, not a legal claim. Specifically, the trial court found that Plaintiffs were neither seeking to impose personal liability on New Miami nor money damages from the village. Rather, Plaintiffs were seeking "the restoration, refund, or return" of the penalties they were forced to pay pursuant to the unconstitutional ordinance, that were wrongfully collected by New Miami, and that were in New Miami's possession. As such, the trial court ruled, Plaintiffs' suit to correct the unjust enrichment of New Miami was a suit brought in equity.

{¶ 8} New Miami now appeals, raising one assignment of error:

{¶ 9} THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S CLAIM FOR SOVEREIGN IMMUNITY, GRANTING SUMMARY JUDGMENT TO PLAINTIFFS-APPELLEES AND DENYING SUMMARY JUDGMENT TO DEFENDANT[-]APPELLANT ON PLAINTIFFS' CLAIM FOR UNJUST ENRICHMENT.

{¶ 10} This court reviews summary judgment decisions denying governmental immunity de novo. *Kirk Bros. Co. v. Trucraft Constr., L.L.C.*, 12th Dist. Clinton No. CA2016-12-021, 2017-Ohio-7281, ¶ 13. We review the trial court's judgment independently and without deference to its determination and use the same standard in our review that the trial court should have employed. *Id.*

{¶ 11} New Miami generally argues it is immune from liability under R.C. Chapter 2744

- 4 -

because its operation of ASEP is a governmental function and there is no unjust enrichment exception to sovereign immunity. New Miami further argues that Count 4 of Plaintiffs' complaint is in fact a legal claim for money damages seeking to impose personal liability on the village for deprivation of due process, disguised as an equitable restitution claim in an effort to avoid the immunity granted to political subdivisions in the performance of governmental functions.

{¶ 12} Count 2 alleged that ASEP violates the Ohio Constitution's guarantee of "due course of law" found in Article I, Section 16 of the Constitution. As stated earlier, the trial court previously granted summary judgment to Plaintiffs upon this due course of law claim. In Count 4, Plaintiffs sought equitable restitution of any penalties they paid pursuant to ASEP on the ground that to allow New Miami to retain the funds wrongfully collected pursuant to an unconstitutional ordinance would unjustly enrich the village.

{¶ 13} Unjust enrichment occurs when "a person has and retains money or benefits which in justice and in equity belong to another." *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, ¶ 20. The purpose of an unjust enrichment claim is not to compensate the plaintiff for loss or damage suffered by the plaintiff, but to enable the plaintiff to recover the benefit he has conferred on the defendant under circumstances in which it would be unjust to allow the defendant to retain it. *Id.* at ¶ 21. Restitution is the remedy for the unjust enrichment of one party at the expense of another. *Santos v. Ohio Bur. of Workers' Comp.*, 101 Ohio St.3d 74, 2004-Ohio-28, ¶ 11. To prevail on a claim for unjust enrichment, a plaintiff must demonstrate that: (1) he conferred a benefit upon the defendant, (2) the defendant had knowledge of the benefit, and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment. *RG Long & Assocs., Inc. v. Kiley*, 12th Dist. Warren No. CA2014-10-129, 2015-Ohio-2467, ¶ 14.

{¶ 14} R.C. Chapter 2744 provides a three-tiered analysis to determine whether a

political subdivision enjoys immunity. The first tier of the analysis provides a general grant of immunity: "[A] political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision * * * in connection with a governmental or proprietary function." R.C. 2744.02(A)(1). Once immunity is established, the second tier of the analysis carves out certain exceptions to immunity which re-establish the liability of a political subdivision in certain delineated situations. R.C. 2744.02(B). Finally, if any exception applies to re-impose liability, the third tier of the analysis focuses on whether any of the defenses contained in R.C. 2744.03 apply to reinstate immunity. *See Cincinnati v. Harrison*, 1st Dist. Hamilton No. C-130195, 2014-Ohio-2844.

{¶ 15} In support of its argument it is immune from liability, New Miami asserts its operation of ASEP is a governmental function. However, whether ASEP involves a governmental function for which there is immunity is germane only if sovereign immunity applies pursuant to the first tier of the analysis. *State ex rel. Fatur v. Eastlake*, 11th Dist. Lake No. 2009-L-037, 2010-Ohio-1448, ¶ 32. That is, does Count 4 of Plaintiffs' complaint assert a claim for "damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision" as required by R.C. 2744.02(A)(1)?

{¶ 16} By its very language and title, R.C. Chapter 2744 applies to tort actions for damages. *Cincinnati*, 2014-Ohio-2844 at ¶ 30; *LaBorde v. Gahanna*, 10th Dist. Franklin Nos. 14AP-764 and 14AP-806, 2015-Ohio-2047, ¶ 18. "Ohio courts have uniformly held that while sovereign immunity bars tort claims for money damages, it has no application in actions for equitable relief." *Cincinnati* at ¶ 30. Thus, "where a political subdivision is not being subjected to a claim for money damages, the near absolute immunity of R.C. 2744.02(A) - the first tier of the [analysis] - is not available." *Id.* at ¶ 29. Accordingly, we must determine if

- 6 -

the relief sought by Plaintiffs constitutes equitable relief or a claim for money damages.

{¶ 17} Simply because a plaintiff characterizes the relief he seeks as being equitable in nature, does not mean it is so.[2] *Cirino v. Ohio Bur. of Workers' Comp.*, 8th Dist. Cuyahoga No. 104102, 2016-Ohio-8323, ¶ 48. Conversely, not every claim for monetary relief constitutes money damages. *LaBorde* at ¶ 19. A specific remedy is not transformed into a claim for damages simply because it involves the payment of money. *See Interim Healthcare of Columbus, Inc. v. Ohio Dept. of Admin. Servs.*, 10th Dist. Franklin No. 07AP-747, 2008-Ohio-2286.

{¶ 18} In determining whether the relief sought by Plaintiffs is legal or equitable in nature, we are guided by several decisions of the Ohio Supreme Court. In support of their respective arguments, Plaintiffs cite *Ohio Hosp. Assn. v. Ohio Dept. of Human Services*, 62 Ohio St.3d 97 (1991); and *Santos*, 2004-Ohio-28, whereas New Miami cites *Cristino v. Ohio Bur. of Workers' Comp.*, 118 Ohio St.3d 151, 2008-Ohio-2013; and *Measles v. Indus. Comm.*, 128 Ohio St.3d 458, 2011-Ohio-123.

{¶ 19} In *Ohio Hosp. Assn.*, several Medicaid providers filed a lawsuit against the Ohio Department of Human Services after the agency promulgated a new administrative rule that lowered certain Medicaid reimbursement rates solely for budgetary reasons and without regard to the rule's effect on efficiency, economy, and the quality of care. The complaint sought declaratory, injunctive, and monetary relief. The monies sought were alleged to have been improperly withheld by the agency pursuant to the unlawfully promulgated reimbursement rate. One of the issues before the Ohio Supreme Court was whether the state of Ohio was "immune from suit for reimbursement of monies withheld under an invalid

---

2. Plaintiffs refer to our opinions in *Barrow I* and *Barrow II* to suggest that we already have characterized their Count 4 claim as an equitable claim. While we did refer to the Count 4 claim as equitable in our opinions, we were only referring to the claim as it was characterized in Plaintiffs' complaint. Whether the claim was equitable or legal was never an issue in *Barrow I* and *Barrow II* and we never ruled upon the nature of the claim.

administrative rule."

**{¶ 20}** The supreme court held that reimbursement sought by the Medicaid providers for amounts unlawfully withheld by the agency pursuant to the improperly promulgated reduced reimbursement rate was "not an award of money damages, but equitable relief." *Ohio Hosp. Assn.*, 62 Ohio St.3d at 104-105. Relying on a United States Supreme Court's decision, the Ohio Supreme Court explained that

> Damages are given to the plaintiff to substitute for a suffered loss, whereas specific remedies "are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled." * * * Thus, while in many instances an award of money is an award of damages, "[o]ccasionally a money award is also a specie remedy."

*Id.* at 105, quoting *Bowen v. Massachusetts*, 487 U.S. 879, 895, 108 S.Ct. 2722 (1988). The supreme court determined that the monetary relief sought was in the nature of specific relief, that is, payment of specific funds of a determined amount to which the Medicaid providers were statutorily entitled, and not an award of money damages to compensate the plaintiffs for whatever losses they suffered or would suffer as a result of the invalid administrative rule. The supreme court then held, "The reimbursement of monies withheld pursuant to an invalid administrative rule is equitable relief, not money damages, and is consequently not barred by sovereign immunity." *Ohio Hosp. Assn.* at 105.

**{¶ 21}** *Santos* involved a restitution claim brought by injured workers who sought to recover funds the Ohio Bureau of Workers' Compensation ("BWC") had collected pursuant to a subrogation statute that was later declared unconstitutional. The injured workers argued that their restitution claim for the return of funds wrongfully held by the state was an equitable action seeking to make them whole. By contrast, the BWC argued that the money sought represented damages for injuries, therefore, the claim was legal in nature. *Santos*, 2004-Ohio-28 at ¶ 10.

**{¶ 22}** The Ohio Supreme Court first noted that "[h]istorically, restitution has been available both in equity and in law as the remedy for an unjust enrichment of one party at the expense of another. Several remedies are available to a litigant seeking restitution, including a judgment for money." *Id.* at ¶ 11. "Although ordinarily such money judgment is obtained by an action at law, a decree of money will sometimes be rendered by a court of equity." *Id.*

**{¶ 23}** Relying on a United States Supreme Court's decision, the Ohio Supreme Court explained that "whether restitution is 'legal or equitable depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought.'" *Santos*, 2004-Ohio-28 at ¶ 13, quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213, 122 S.Ct. 708 (2002). Therefore,

> Restitution is available as a *legal* remedy when a plaintiff cannot "assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him." Restitution is available as an *equitable* remedy "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." "Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."

(Citation omitted and emphasis sic.) *Santos* at ¶ 13, quoting *Great-West Life* at 214.

**{¶ 24}** Based upon the foregoing and its prior decision in *Ohio Hosp. Assn.*, the supreme court held that because "the workers' compensation subrogation statute was unconstitutional" and thus, "any collection or retention of moneys collected under the statute by the BWC was wrongful," the action seeking restitution by the injured workers "is not a civil suit for money damages but rather an action to correct the unjust enrichment of the BWC. A suit that seeks the return of specific funds wrongfully collected or held by the state is brought in equity." *Santos* at ¶ 17.

{¶ 25} New Miami contrasts the foregoing supreme court decisions with two other, more recent, supreme court decisions, *Cristino* and *Measles*. *Cristino* involved a workers' compensation recipient, Cristino, who, pursuant to an agreement with the BWC, agreed to relinquish his statutory right to receive periodic payments for permanent total disability ("PTD") until his death in exchange for a lump-sum payment of the present value of his PTD claim. Following his settlement with the BWC, Cristino filed a class-action lawsuit against the bureau alleging it had improperly calculated the present value of his PTD claim. Cristino sought full restitution of the difference between the amount the BWC represented was the present value of his PTD claim and the true present value. The BWC argued that the claim for restitution was a request for money damages.

{¶ 26} Relying upon its prior holding in *Ohio Hosp. Assn.* as well as the United States Supreme Court *Great-West Life* and *Bowen* decisions, which distinguished between a claim for funds due under a contract and a claim for funds due pursuant to a statute, the Ohio Supreme Court held, "The rule applied in *Ohio Hosp. Assn.* is clear: A claim against the state for money due under a contract is not a claim of equitable restitution[.]" *Cristino*, 2008-Ohio-2013 at ¶ 11; *Great-West Life*, 534 U.S. at 210 ("[a] claim for money due and owing under a contract is 'quintessentially an action at law.'"). Then, looking to the basis for Cristino's restitution claim and the nature of the underlying remedies sought, the supreme court found that the claim was a legal, and not an equitable, claim of restitution because Cristino was not seeking the restitution of funds to which he was statutorily entitled. Rather, the claim sought money due pursuant to Cristino's agreement with the BWC, that is, funds due under a contract:

> Cristino's restitution claim does not challenge the validity of his agreement with the Bureau; he does not seek a reinstatement of the benefits accorded to him by statute. On the contrary, Cristino requested the amount he believed was proper under the agreement. His claim for restitution is therefore not a claim to

enforce his statutory right.

*Cristino* at ¶ 12, 14.

{¶ 27} The supreme court further rejected Cristino's assertion that his action was equitable under *Santos*. The court found that *Santos* was inapplicable because the plaintiffs in *Santos* "sought return of funds already collected by the BWC under the subrogation statute. The plaintiffs thus sought the return of funds that had once been in their possession and so belonged to them 'in good conscience.'" *Cristino* at ¶ 15.

{¶ 28} *Measles* involved recipients of workers' compensation benefits who were entitled to weekly payments of disability benefits for life. Instead of receiving all the benefits according to the statutory schedule, the plaintiffs entered into agreements with the BWC, opting to receive portions of their benefits through lump-sum advancements. The plaintiffs subsequently filed a class-action lawsuit against the BWC, alleging that the reduction of their periodic benefits pursuant to the agreements should have stopped once the aggregate value of the periodic benefit reductions equaled the amount of the lump-sum advancements.

{¶ 29} Relying upon *Cristino*, the Ohio Supreme Court noted that "[i]f the essence of a claim is not of restitution for money owed under a contract, but instead restitution for the state's unjust enrichment by withholding funds to which a worker had a statutory right, then the ultimate relief sought is equitable restitution." *Measles*, 2011-Ohio-1523 at ¶ 9. Noting that "[t]he heart of this matter is a contract dispute" between the plaintiffs and the BWC, the supreme court held that the plaintiffs' claim was a claim for money due under a contract and was therefore not an equitable claim of restitution. *Id.* at ¶ 12-13. The supreme court again found that *Santos* was inapplicable because the plaintiffs in *Santos* sought repayment of funds that were previously in their possession and that the BWC had collected pursuant to a subrogation statute that was later declared unconstitutional. *Id.* at ¶ 10.

{¶ 30} Although monetary damages are normally associated with compensation for

previous damage or injury, the foregoing supreme court decisions make clear that "[e]ven when the relief sought consists of the state's ultimately paying money, a cause of action will sound in equity if 'money damages' is not the essence of the claim." *Interim Healthcare*, 2008-Ohio-2286 at ¶ 15. Thus, a claim seeking to recover a specific amount of money wrongfully collected or held by a state agency is an equitable claim of restitution, and not a substitute for the loss occasioned by some prior injury. *Santos*, 2004-Ohio-28 at ¶ 17. In those cases, restitution is the "remedy that prevents the state from being unjustly enriched at the expense of the plaintiff, who, in good conscience, is entitled to the funds, and who can clearly trace them as rightfully belonging to the plaintiff, though they are in the defendant's possession." *Morning View Care Ctr. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 04AP-57, 2004-Ohio-6073, ¶ 19.

{¶ 31} By contrast, a claim seeking to recover damages to compensate or substitute for a suffered loss is a legal claim of restitution. *Id.* at ¶ 25; *Ohio Academy of Nursing Homes v. Ohio Dept. of Job & Family Servs.*, 114 Ohio St.3d 14, 2007-Ohio-2620, ¶ 18. Similarly, a claim for restitution relating to a contract dispute constitutes an action in law. *Measles*, 2011-Ohio-1523 at ¶ 9.

{¶ 32} We find that *Cristino* and *Measles* are not applicable as both decisions involved a claim for money due under a contract, and Plaintiffs are not seeking restitution for money due under an agreement, settlement, or contract with New Miami. Nor are Plaintiffs seeking money damages to compensate or substitute for a suffered loss.

{¶ 33} Rather, as in *Santos*, Plaintiffs are seeking the recovery of the specific amount of penalties they paid pursuant to the unconstitutional ordinance and that were therefore wrongfully collected by New Miami. That is, Plaintiffs are seeking the return of specific monies that had once been in their possession and so belonged to them "in good conscience," and thus have asserted a claim for the return of the very thing to which the

class was allegedly entitled in the first place. *Santos*, 2004-Ohio-28 at ¶ 13-14. The action seeking restitution by Plaintiffs "is not a civil suit for money damages but rather an action to correct the unjust enrichment of" New Miami. *Id.* at ¶ 17. As the Ohio Supreme Court plainly held, "A suit that seeks the return of specific funds wrongfully collected or held by the state is brought in equity" and "is consequently not barred by sovereign immunity." *Id.*; *Ohio Hosp. Assn.*, 62 Ohio St.3d at 105.

{¶ 34} New Miami nevertheless asserts that Plaintiffs' claim is not an equitable claim but a legal claim for money damages, raising three issues.

{¶ 35} New Miami first argues that Plaintiffs' claim is a legal claim for money damages because it seeks to impose personal liability on the village for the injury of deprivation of due process suffered by Plaintiffs. In support of its argument, New Miami cites *Vos v. State*, 7th Dist. Columbiana No. 16 CO 0034, 2017-Ohio-4005, for the proposition that claims for denial of due process are legal, not equitable. However, in *Vos*, the plaintiffs claimed a denial of due process for being allegedly denied their right to appeal a decision to a state agency. The claims in *Vos* did not involve a deprivation of money or other property, but rather the deprivation of a right. Damages were sought to compensate for the deprivation of that right. Here, Plaintiffs' claim is for the reimbursement of monies they were compelled to pay pursuant to an unconstitutional ordinance.

{¶ 36} The failure of the ASEP hearing procedure to comport with due process was not the basis of Plaintiffs' claim for reimbursement of monies paid as penalties under ASEP. Rather, the lack of due process afforded by ASEP was the basis for a declaration that the ordinance adopting ASEP was unconstitutional and unenforceable, and to enjoin further enforcement of ASEP, as set forth in Counts 2 and 3 of Plaintiffs' complaint. The allegations of Count 4 are simply that the collection of the penalties under an unconstitutional ordinance is "unconscionable" and that retention of the penalties unjustly enriches New Miami.

{¶ 37} New Miami claims that this is not a case where Plaintiffs are seeking reimbursement for services rendered or money "wrongfully collected." New Miami asserts that the penalties paid by Plaintiffs were not "wrongfully collected" because New Miami has the authority "to operate traffic programs and collect penalties for violation of traffic laws." Apparently, it is New Miami's contention that because it has legal authority to collect penalties for violation of its traffic laws, Plaintiffs' claim is necessarily for money damages based upon a denial of due process in the collection of those penalties. While it is true that New Miami has the authority to enforce its traffic laws, it must do so in a constitutional manner. New Miami does not have the authority to do so in an unconstitutional manner.

{¶ 38} New Miami seeks to distinguish *Santos* and *Ohio Hosp. Assn.* on the ground that the state "wrongfully collected certain funds" in those cases, whereas the penalties collected for the ASEP violations were not "wrongfully collected" because they were collected pursuant to New Miami's authority to establish traffic programs. In *Santos*, the Ohio Supreme Court determined that the subrogation sought by the BWC was wrongful because it was pursuant to an unconstitutional statute. In *Ohio Hosp. Assn.*, the supreme court found that the reduction of the Medicaid reimbursement rates was wrongful because it was pursuant to a statute and administrative regulation that violated the Social Security Act. This case is like *Santos* and *Ohio Hosp. Assn.* in that the ASEP penalties were collected pursuant to an unconstitutional ordinance. The distinction claimed by New Miami is simply not present.

{¶ 39} Just as New Miami has the authority to enforce its traffic laws, the state has the authority to adopt statutes and regulations for the administration of its Workers' Compensation and Medicaid programs, as was the case in *Santos* and *Ohio Hosp. Assn.* The determinative issue in *Santos* and *Ohio Hosp. Assn.* is not whether the government has authority to administer its various programs and enforce its laws in a general sense, but

whether that authority has been exercised within the parameters of constitutional and statutory authority. Collection of penalties pursuant to ASEP fails this test.

{¶ 40} Moreover, there are many Ohio cases where claims for reimbursement of monies collected by a political subdivision were found to be equitable claims even though the collection of monies was within the political subdivision's authority. *See LaBorde*, 2015-Ohio-2047 (over-collection of municipal income tax); *Judy v. Ohio Bur. of Motor Vehicles*, 6th Dist. Lucas No. L-01-1200, 2001 Ohio App. LEXIS 5978 (Dec. 31, 2001) (double-billing of driver's license reinstatement fees); *Dunlop v. Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 11AP-929, 2012-Ohio-1378 (over-collection of child support payments by a child support enforcement agency); and *San Allen, Inc. v. Buehrer,* 8th Dist. Cuyahoga No. 99786, 2014-Ohio-2071 (overcharging certain employers for workers' compensation insurance premiums). In all of these cases, the state or political subdivision involved had the authority to require the payment. Again, the issue is not whether the government has the authority to require the payment, but whether the authority was exercised in a legal and constitutional manner.

{¶ 41} In 2013, the Sixth Appellate District found that a claim for the return of fines collected by the city of Toledo pursuant to a municipal program very similar to ASEP was an equitable claim. *Walker v. Toledo*, 6th Dist. Lucas No. L-12-1056, 2013-Ohio-2809, ¶ 16. The Ohio Supreme Court later reversed the holding of the Sixth Appellate District that Toledo's program violated the jurisdiction of the municipal court under the Ohio Constitution. *Walker v. Toledo*, 143 Ohio St.3d 420, 2014-Ohio-5461. However, the supreme court did not address the appellate court's holding that the claim for return of fines paid pursuant to the program was equitable in nature, and that holding remains good law.

{¶ 42} Citing *Santos and Ohio Hosp. Assn.*, New Miami further asserts that the distinguishing factor between legal and equitable claims is that equitable claims are based upon "a pre-existing claim by statute or other basis upon funds wrongfully collected or

retained by the State." This appears to be a correct statement of the law. For example, in *Santos*, the Ohio Supreme Court characterized the remedy sought as equitable "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Santos*, 2004-Ohio-28 at ¶ 13. In *Ohio Hosp. Assn.*, the supreme court found the remedy sought was equitable, rather than legal, where the claim for relief is "to give the plaintiff the very thing to which he was entitled." *Ohio Hosp. Assn.*, 62 Ohio St.3d at 105.

{¶ 43} New Miami goes on to argue that Plaintiffs are seeking not something upon which they had a pre-existing claim, but rather, compensation for a due process injury. Suffice it to say, Plaintiffs' payment of penalties pursuant to an unconstitutional ordinance is no different than the monies withheld by the state pursuant to invalid statutory and regulatory provisions in *Ohio Hosp. Assn.* and *Santos*. The issue primarily turns upon whether the gist of the claim for money is an injury inflicted upon the plaintiff by the defendant or a benefit conferred upon the defendant by the plaintiff. The former seeks legal relief whereas the latter seeks equitable relief. The plaintiffs in this case seek the latter.

{¶ 44} New Miami next argues that Plaintiffs' claim is not an equitable claim of restitution because New Miami does not have and never took possession of the funds which are the basis of the claim. In other words, New Miami asserts that in order for a claim of restitution to be equitable, the money or property involved must be identifiable, in specie. As stated above, pursuant to New Miami's contract with Optotraffic, the penalties were paid directly to Optotraffic, which retained 40 percent of the penalties and forwarded the remaining 60 percent of the penalties to New Miami.

{¶ 45} Accepting New Miami's argument would permit a defendant to defeat a claim for equitable restitution simply by spending or commingling the monies involved. In addition, actual possession of the monies wrongfully collected is not a necessary element of a claim

for equitable restitution. *Dunlop*, 2012-Ohio-1378.

{¶ 46} In *Dunlop*, the plaintiff argued "that the claims in *Santos* and *Interim HealthCare* were found to be claims in equity because the state was still in possession of all of the funds that it had wrongly collected, while his claim in the present case is a proper conversion claim because the state wrongfully collected and then redistributed the money." *Id.* at ¶ 13. The Tenth Appellate District squarely rejected the argument, stating

> That the state still possessed the funds is not the basis for either decision. In *Santos*, the syllabus provided that "[a] suit that seeks the return of specific funds wrongfully collected or held by the state is brought in equity." Thus, the funds can either be wrongfully collected or wrongfully held by the state to form the basis of an action brought in equity. Likewise, in *Interim HealthCare*, the court stated, "[c]ases in which a plaintiff claims a state agency has wrongfully collected certain funds are characterized generally as claims for equitable restitution."

(Citations omitted.) *Id.* The appellate court then found that "merely because ODJFS might have eventually distributed the allegedly improperly collected funds to [other agencies] does not transform his claim seeking restitution of those funds from one sounding in equity to one sounding in law. * * * What ODJFS might have subsequently done with the funds is not relevant[.]" *Id.* at ¶ 14. *See also San Allen*, 2014-Ohio-2071 at ¶ 61 (Fact that the BWC distributed the funds after the excessive premiums were wrongfully collected from the class, such that the specific funds constituting the plaintiffs' overpayments may no longer be readily traceable, does not transform plaintiffs' claim from one sounding in equity into one sounding in law).

{¶ 47} We find the reasoning in *Dunlop* to be persuasive and apply it here. The fact that New Miami only received 60 percent, and not 100 percent, of the penalties paid by Plaintiffs and initially collected by Optotraffic does not transform Plaintiffs' claim from one sounding in equity to one sounding in law. The penalties paid by Plaintiffs were collected by Optotraffic on behalf of New Miami, and 40 percent of those monies was used by New Miami

to pay Optotraffic for its services in administering ASEP.[3]

{¶ 48} Finally, New Miami argues that Plaintiffs' restitution claim is in fact a legal claim, given Plaintiffs' demand for pre-judgment interest. In support of its argument, New Miami cites *Zelenak v. Indus. Comm.*, 148 Ohio App.3d 589, 2002-Ohio-3887, ¶ 24 (10th Dist.) ("The payment of interest prayed for constitutes a substitute for a particular loss suffered by [the plaintiffs]").

{¶ 49} *Zelenak* does not stand for the proposition that a demand for interest transforms an equitable claim into a legal claim of restitution. *Zelenak* involved former disability compensation recipients whose wrongly terminated benefits were reimbursed without interest. The issue before the Tenth Appellate District was whether the trial court had concurrent jurisdiction over the case or whether the court of claims had exclusive subject-matter jurisdiction.[4]

{¶ 50} Noting that the payment of interest prayed for constituted a substitute for a particular loss suffered by the plaintiffs, the appellate court found that the plaintiffs' claim *for the payment of interest* was one for money damages. *Zelenak*, 2002-Ohio-3887 at ¶ 24. However, the appellate court further found that *the reimbursement of the wrongly terminated benefits* constituted equitable relief and not money damages: "The reimbursement of the overpayments collected from [the plaintiffs] or payment of the TTD compensation withheld from some of them, presents a form of relief that merely requires a state agency to pay

---

3. We make no ruling on the amount of New Miami's liability. This is an interlocutory appeal concerned solely with the issue of whether the trial court erred in rendering summary judgment against New Miami upon its claim of immunity pursuant to R.C. Chapter 2744.

4. Pursuant to R.C. 2743.03, the court of claims has exclusive jurisdiction over civil actions against the state for money damages that sound in law. R.C. Chapter 2743 does not, however, divest other courts of jurisdiction to hear and determine a civil action in which the sole relief sought against the state is a declaratory judgment, injunctive relief, or other equitable relief. R.C. 2743.03(A)(2). A suit seeking only declaratory, injunctive, or other equitable relief may be brought against the state in the court of common pleas. R.C. 2743.03(A)(1). However, where claims for damages are coupled with claims for injunctive, declaratory, or other equitable relief, all of the claims are within the exclusive, original jurisdiction of the court of claims. R.C. 2743.03(A)(2).

amounts it should have paid all along, clearly constituting equitable relief and not monetary damages." *Id.* at ¶ 19. The appellate court concluded that because the relief sought by the plaintiffs included a claim for money damages, the court of claims had exclusive jurisdiction over the case and the trial court did not err in dismissing the case for lack of subject-matter jurisdiction. *Id.* at ¶ 21- 22, 25. Therefore, the fact that Plaintiffs are also demanding pre-judgment interest does not transform their restitution claim from one sounding in equity to one sounding in law.

{¶ 51} In light of all of the foregoing, we find that Plaintiffs' unjust enrichment/restitution claim is an equitable claim of restitution and is therefore not barred by sovereign immunity. Accordingly, we affirm the interlocutory judgment of the trial court with respect to its denial of New Miami's request for governmental immunity. This matter is remanded for further proceedings consistent with this opinion.

HENDRICKSON, P.J., and RINGLAND, J., concur.