[Cite as *Dover Chem. Corp. v. Dover*, 2022-Ohio-2307.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| DOVER CHEMICAL CORPORATION | : | JUDGES: |
| | : | |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2021 AP 07 0016 |
| | : | |
| CITY OF DOVER, OHIO, ET AL. | : | |
| | : | |
| | : | |
| Defendants-Appellants | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Tuscarawas County
                            Court of Common Pleas, Case No. 2021
                            CV 02 0097

JUDGMENT:                    AFFIRMED IN PART; REVERSED
                            AND REMANDED IN PART

DATE OF JUDGMENT ENTRY:      June 29, 2022

APPEARANCES:

For Plaintiff-Appellee:                 For Defendants-Appellants:

SCOTT L. BRAUM                          JOHN T. MCLANDRICH
Scott L. Braum & Associates, Ltd.       FRANK H. SCIALDONE
812 East Franklin St., Suite C          TERENCE L. WILLIAMS
Dayton, OH 45459                        Mazanec, Raskin & Ryder Co., L.P.A.
                                        100 Franklin's Row
                                        34305 Solon Road
                                        Cleveland, OH 44139

*Delaney, J.*

{¶1}   Defendants-Appellants City of Dover, Ohio and Douglas O'Meara appeal the July 9, 2021 judgment entry of the Tuscarawas County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

### Amended Complaint

{¶2}   On March 22, 2021, Plaintiff-Appellee Dover Chemical Corporation ("Dover Chemical") filed an Amended Complaint for Preliminary Injunction, Declaratory Judgment, and Other Relief in the Tuscarawas County Court of Common Pleas, naming Defendant-Appellants City of Dover, Ohio ("the City") and City of Dover Law Director Douglas O'Meara ("the Law Director") as defendants. In its amended complaint, Dover Chemical raised 11 causes of action:

(1) Declaratory Judgment – Dover Chemical is free to leave Dover Light and Power;

(2) Declaratory Judgment – Constitutional Violations;

(3) Declaratory Judgment – Non-Contractual Penalties;

(4) Declaratory Judgment – Alleged Improper Gifts;

(5) Declaratory Judgment – Statute of Limitations;

(6) Defamation;

(7) Unjust Enrichment;

(8) Breach of Contract;

(9) Negligent Misrepresentation;

(10) Fraudulent Misrepresentation; and

(11) Preliminary and Permanent Injunction.

{¶3} In response to the amended complaint, Defendants-Appellants City of Dover, Ohio, and Douglas O'Meara filed a Motion to Dismiss on April 5, 2021. Dover Chemical filed a response on April 26, 2021. The City and Law Director filed a reply on May 10, 2021.

{¶4} The following facts are based on the amended complaint and related attachments.

**Relationship between Dover Chemical and Dover Light and Power**

{¶5} Dover Chemical is an Ohio corporation with its principal place of business located on Davis Road, Dover Township, Ohio in Tuscarawas County. At issue in this appeal is Dover Chemical's facility located on Davis Road, which is located outside the City of Dover limits.

{¶6} The City of Dover is a political subdivision located in Tuscarawas County. The Law Director is an elected position for the City of Dover. The City operates Dover Light and Power ("Dover Power"), a municipally owned public utility facility. Dover Power operates its own power generation facility, but also purchases and resells electricity to customers inside and outside of the City's territorial limits.

{¶7}  In a June 1, 1976 letter to Dover Chemical, the City of Dover Superintendent of the Electric Field Division explained and confirmed a conversation concerning Dover Chemical's additional power supply request. (Appendix A, Amended Complaint, March 22, 2021). The City proposed in the letter that primary metering would be installed "on the first pole north of the corner" and that location would establish the point of service. The City agreed to construct an electrical line and install distribution transformers beyond the metering point and provide electrical services inside the fence line of Dover Chemical's

Davis Road facility. The City, not Dover Chemical, would own the line and equipment and it would bill Dover Chemical for all metered power with no allowances for customer ownership or system losses beyond the meter. If Dover Chemical decided in the future to purchase the line and equipment beyond the meter, the selling price would be established at that time based on the appraised value of the line and equipment.

{¶8} From June 1, 1976, to the present, Dover Power charged Dover Chemical at a rate equivalent to the industrial rate set by ordinance for industrial customers of Dover Power located inside the City limits.

### Proposed Reorganization of the Relationship

{¶9} On February 5, 2003, the City Mayor sent a letter to Dover Chemical regarding Dover Power's provision of electrical services to Dover Chemical. (Appendix B, Amended Complaint, March 22, 2021). The Mayor stated in the letter that the continuing practice of the City maintaining and upgrading the lines and equipment inside the Davis Road facility, past the primary metering pole, was not in accordance with the Electric Service Regulations established by the City, nor was it in the best interests for the safety concerns of the City personnel. On May 1, 2003, the City would turn over ownership of all electric facilities and equipment from the primary metering pole at Davis Street to Dover Chemical.

{¶10} Dover Chemical did not object to the terms of the February 5, 2003 letter and the electrical equipment from the primary metering pole became the property of Dover Chemical on May 1, 2003.

**2019 Electric Rate Renegotiation**

{¶11} In 2019, Dover Chemical approached the City to negotiate a reduction in its electrical rate. Dover Chemical also approached American Electric Power to determine its options for providing power to the facility if Dover Chemical terminated its relationship with Dover Power. The Mayor submitted a proposal to Dover Chemical with three options for an electrical rate change: (1) if Dover Chemical agreed to annex into the City, the electrical rate would be .08 + PCA + KWH tax (stay at 15 KV and served by one meter), (2) .085 + PCA + KWH tax (stay at 15 KV served by one meter), or (3) 69 KV Rate if Dover Chemical builds a substation and pays for the 6 spans of wire from the north sub to their property, with a rate of .07 to .072 + PCA + KWH tax to be given to only Dover Chemical (served by one meter at 69 KV power to substation). (Appendix C, Amended Complaint, March 22, 2021). At the time of the proposal, Dover Chemical was willing to accept the second option.

{¶12} On May 22, 2020, the Law Director sent an email to Dover Chemical with the subject line, "notice for non-destruction of records." (Appendix E, Amended Complaint, March 22, 2021). The Law Director's email stated, "Attached is the notice to restrain and not destroy records."

{¶13} Before Dover Chemical communicated its response to the Mayor's proposal, it received an email from the Law Director on May 24, 2020, which informed Dover Chemical that Ordinance 34-14, enacted by the City Council, governs the electricity rates for Dover Chemical. The Law Director stated in the email that only the City Council had the authority to establish or adjust electricity rates for Dover Power, not the Mayor. The Law Director stated the Mayor had no authority to offer the "gift" of City services,

materials, equipment, or personnel and would be considered illegal. (Appendix D, Amended Complaint, March 22, 2021).

**May 2020 City Council Meeting**

{¶14} On May 26, 2020, the City Council held a special meeting called by the Mayor for the purpose of discussing the rate classes. At the special meeting, the Law Director requested two committee assignments, recorded in the Special Meeting Minutes. (Appendix F, Amended Complaint, March 22, 2021). The minutes state:

Law Director O'Meara requested two assignments: (1) a request for a committee assignment that any outside the city industrial customer that received any services, equipment, manpower, or materials from the Dover Light and Power without paying in full for those services, materials, manpower, and material [sic] have a surcharge assessed and collected on that customer's bill above the rates assessed by ordinance 34-14 in an amount up to 50% of the customer's bill until that customer can demonstrate and prove by clear and convincing evidence that they have been repaid the people in the city of Dover in full for all improper or illegal services, material, equipment, or manpower received from the date first provided until repaid in full, (2) a request for a committee assignment to consider applying an up to 20% surcharge to electric rates for electric consumers (industrial, but perhaps commercial, or residential) of the city of Dover who receive that service at locations outside the corporate limits of the city of Dover, above the rates established in ordinance 34-14.

{¶15} The City discovered that after 2003, it had continued to maintain the lines and equipment inside the Dover Chemical Davis Road facility, past the primary metering pole. The City Council discussed the Mayor's rate proposals to Dover Chemical. The City Council ultimately voted to table the proposal presented to Dover Chemical. The Law Director's request for assignments were assigned to "committee of the whole."

**Draft Version of Emergency Ordinance 29-20**

{¶16} The Law Director prepared a draft ordinance entitled, "Emergency Ordinance 29-20." (Appendix G, March 22, 2021, Amended Complaint). The draft ordinance stated in pertinent part to this appeal:

* * *

Whereas, as a primary metered customer, [Dover Chemical] is required to maintain all equipment and services beyond the meter; and

Whereas, [Dover Power] has been providing power to the Dover Chemical Corporation ("DCC") since 1976 in accordance with rates established by City ordinance; and

Whereas, [Dover Chemical] has been receiving services that were not invoiced and billed in accordance with the City regulations; and

Whereas, instead, the City of Dover has provided maintenance, service, equipment, and materials beyond the primary meter without cost to [Dover Chemical]; and

Whereas, [Dover Chemical] was informed in or around September, 2019 that no further service would be performed by [Dover Power] or the City of

Dover's electric field division beyond the meter or contrary to the regulations mandated by Ordinance 111-75; and

Whereas, partial charges have been assessed to [Dover Chemical] after September 2019 to recoup some but not the full cost of services, materials, and equipment previously provided since the commencement of services to [Dover Chemical]; and

Whereas, a municipal-owned utility may impose a surcharge on ratepayers that are outside the municipality pursuant to *City of Hudson v. City of Akron*, 97 N.E.3d 738, 2017-Ohio-7590 (9th Dist.2017); and

Whereas, in light of, the constitutional guarantees afforded municipalities with regard to regulating and charging for utility services which have not been fully paid, it is reasonable to assess an additional surcharge under such circumstances; and

* * *

Council adopts and incorporates the whereas clauses of this ordinance as if fully restated hereinafter and specifically finds that for 44 years [Dover Chemical] has received benefits and services provided to no other primary metered customer and therefore a method and means to collect what has been improperly garnered is necessary.

Charging a rate and an additional surcharge rate for [Dover Chemical] for primary metered power used over a 100,000 KWhs per month is clearly justified by the record. The practices are and were contrary to ordinance 111-75, the electric service regulations, were hidden from the public, and

were done with the specific purpose to grant an unlawful benefit to this singular out of the city electric customer, [Dover Chemical], without any foundation in the law.

It was an unjust discrimination to provide [Dover Chemical] this benefit since June 1, 1976, since February 5, 2003, and the entire time frame from the enactment of ordinance 111-75 and the adoption of these electric service regulations.

It is a required just discrimination and remedy that an additional rate be charged to recoup these improper funds, materials, wages, benefits, equipment and other illegal and improper incentives provided to [Dover Chemical] in derogation of ordinance 111-75 and the electric service regulations of the city of Dover.

* * *

(Appendix G, March 22, 2021, Amended Complaint). The draft ordinance went on to establish rates for the use of Dover Power's electric utility and service.

**City Council Rejects the Mayor's Rate Proposals**

{¶17} The City Council formally rejected the Mayor's rate proposals at its council meeting held on August 3, 2020.

**Local News Reporting of the Dispute Between the City and Dover Chemical**

{¶18} On September 10, 2020, the Times-Reporter newspaper published an article entitled, "Dover Chemical may face surcharge." (Appendix H, March 22, 2021, Amended Complaint). The article stated, "Council is considering an ordinance to put a surcharge on electricity used by Dover Chemical Corp., which would allow the city to

recoup the cost of what Law Director Doug O'Meara says is illegal services the Dover Electric Field Division has been providing the company for 44 years." The article referred to a letter written by the Law Director to the City Council:

In a letter to council, he cited one example.

On February 25, 2017, at least seven employees worked 14.5 hours of overtime to repair a pole broken at Dover Chemical.

"The employees performed extensive maintenance directly as a result of the extensive damage when DCC (Dover Chemical Corp.) damaged and caused an extensive failure," he wrote.

"The pole was broken by DCC after they were told that numerous poles and pieces of equipment on the premises and behind the DCC meter were dangerous and unsafe. Despite extensive advanced warning and information that they need to repair and maintain the equipment, DCC did not do so."

O'Meara estimated that over the past 44 years, Dover Chemical has received about $2.2 million in free uncompensated services.

"They would have a breakdown or something would happen and we would go in there with our expensive equipment, with our expensive materials, our expensive employees and do the work and not bill them," he said.

* * *

So, on May 1, 2003, the city turned over ownership of all electric facilities and equipment at the plant to the company.

"Thereafter this agreement was immediately violated," O'Meara wrote in his

letter to council. "Until my discovery in late 2019, Dover electric field division

continued to improperly and illegally maintain DCC's facilities and

equipment."

* * *

O'Meara said the surcharge, if approved, would help Dover recoup some of

the money it has spent over the years servicing the company's equipment.

"It probably won't be enough but it will be at least something to repay some

of the benefits that nobody else got, certainly nobody in the city," he said.

He added, "It should not have occurred. It should not have happened, and

it should not have been allowed. When I discovered it, I essentially issued

the order that they stop providing the illegal gift."

* * *

(Appendix H, March 22, 2021, Amended Complaint).

### Enactment of Rate Increase

{¶19} On February 15, 2021, the City Council passed an amended version

Emergency Ordinance 29-20. (Appendix I, March 22, 2021, Amended Complaint):

* * *

Whereas, [Dover Power] has been providing power to the Dover Chemical

Corporation ("DCC") since 1976 in accordance with rates established by

City of Dover ordinance; and

Whereas, upon investigation of and deliberation by this Council, it has become evident that [Dover Chemical] has receiving services that were not invoiced and billed in accordance with the City of Dover regulations; and

Whereas, instead, the City of Dover has provided maintenance, service, equipment, and materials beyond the primary meter without cost to [Dover Chemical]; and

Whereas, partial charges have been assessed to [Dover Chemical] after September 2019 to recoup some but not the full cost of services, materials, and equipment previously provided since the commencement of services to [Dover Chemical]; and

Whereas, the City of Dover has provided [Dover Chemical] thousands of pages of municipal records documenting the provision of maintenance, service, equipment, and materials beyond the primary metering points without charge;

Whereas, in addition to providing documentation, City Council pursued efforts to resolve this issue with [Dover Chemical] without legislative action; and

Whereas, it has now become clear that no such negotiated resolution is possible; and

Whereas, a municipal-owned utility may impose a surcharge on ratepayers that are outside the municipality pursuant to *City of Hudson v. City of Akron*, 97 N.E.3d 738, 2017-Ohio-7590 (9th Dist.2017); and

Whereas, in light of, the constitutional guarantees afforded municipalities with regard to regulating and charging for utility services which have not been fully paid, it is reasonable, non-arbitrary, non-capricious, and constitutional to assess an additional surcharge under such circumstances; and

* * *

Council adopts and incorporates the whereas clauses of this Ordinance as if fully restated hereinafter, and specifically finds that for 44 years [Dover Chemical] has received benefits and services provided to no other primary metered customer and therefore, a method and means to recoup what [Dover Chemical] has improperly received is necessary.

Charging a rate and an additional surcharge rate for [Dover Chemical] for primary metered power used over a 100,000 KWhs per month is justified this Council's investigation. The practices are and were contrary to Ordinance 111-75, the electric service regulations, and resulted and resulted [sic] in an improper benefit that only [Dover Chemical] received.

It was an unjust discrimination to provide [Dover Chemical] these benefits. It is just discrimination and remedy that an additional rate be charged to recoup the costs and value of those benefits provided to [Dover Chemical].

* * *

The amended ordinance established the rates and surcharge to be assessed on Dover Chemical for the provision of electricity by Dover Power.

{¶20} The Mayor vetoed Amended Emergency Ordinance 29-20 on February 22, 2021. On March 12, 2021, the City Council voted to override the Mayor's veto and adopted Amended Emergency Ordinance 29-20.

### The City's Motion to Dismiss

{¶21} Dover Chemical filed its amended complaint against the City and Law Director on March 22, 2021. In the amended complaint, Dover Chemical brought three claims relevant to this appeal: defamation, unjust enrichment, and negligent misrepresentation.

{¶22} In Count Six, Dover Chemical alleged the City and Law Director made public, defamatory statements injurious to Dover Chemical's business reputation alleging it was involved in illegal dealings and improper receipt of goods, services, property, and other things of value. Dover Chemical claimed the statements were set forth in publicly discoverable correspondence, in public records of the meetings of the City Counsel, and in print media. Because the statements were made with malicious purpose, in bad faith, or in a wanton or reckless manner, Dover Chemical argued the statements were outside the scope of immunity provided under R.C. 2744.03.

{¶23} In Count Seven, Dover Chemical claimed the City was unjustly enriched by the following activities:

19. DL&P does not generate all the electricity that it sells to customers, but instead purchases and resells electricity, including the electricity that it supplies to DCC's buildings and facilities outside of the City.

20. DL&P electrical rates are substantially higher than rates that can be obtained elsewhere by any power purchaser outside of the City limits.

21. The City purchases electricity at or near the open market cost that DCC would otherwise pay, and then resells it to DCC at a substantial premium.

22. All other customers of DL&P are charged similar inflated electricity costs.

* * *

105. As set forth above, the City has been purchasing electricity from another source and reselling it outside of the City's borders at a profit;

106. The City had a duty to notify DCC when it could no longer generate sufficient electricity to legally supply DL&P's resident customers as well as customers such as DCC outside of the City;

107. The City failed to notify DCC when DL&P reached its generation capacity to supply customers;

108. The City continued to not only resell purchased electricity to DCC in violation of the Ohio Constitution, but also to do so at rates that resulted in a profit to DL&P over and above its costs for distribution to DCC.

109. Meanwhile, DCC was purchasing electricity from DL&P at a cost substantially higher than what it could have obtained in a competitive market from the appropriate PUCO provider;

110. As a result of the City's resale of purchased electricity outside of the City's borders and its profits derived from such at DCC's expense, the City has been unjustly enriched.

(Amended Complaint, March 22, 2021).

{¶24} In Count Nine of its amended complaint, Dover Chemical alleged that in March 2019, the City represented that it was willing to negotiate in good faith for a more competitive rate for electrical services provided by Dover Power. Unbeknownst to Dover Chemical, the City had no intention of negotiating rates and was working to effectuate a rate increase. Dover Chemical claimed the false representations provided by the City caused Dover Chemical to delay efforts to transition to AEP, resulting in economic harm in the form of the costs of negotiating and overpayment for electric service from Dover Power.

{¶25} The City, on behalf of itself and the Law Director, filed a motion to dismiss the entirety of the amended complaint pursuant to Civ.R. 12(B)(6), failure to state a claim, and 12(B)(7), failure to join a party. Relevant to the within appeal, the City argued Dover Chemical's claims of defamation, unjust enrichment, and negligent misrepresentation failed under Civ.R. 12(B)(6) because they were entitled to statutory immunity pursuant to R.C. Chapter 2744. The City further claimed the Law Director's statements were protected by absolute privilege.

{¶26} In response, Dover Chemical contended the City, in operating an electrical utility, was engaged in a proprietary function and therefore Dover Chemical's claim of negligence was not protected by statutory immunity. It further contended that the Law Director's statements about Dover Chemical were not protected by privilege and went outside the scope of immunity provided by R.C. Chapter 2744.

**Judgment**

{¶27} On July 9, 2021, the trial court issued its judgment entry granting in part and denying in part the City's motion to dismiss. Specifically, it granted the City's motion to

dismiss as to two of Dover Chemical's claims for declaratory judgment and claim of fraudulent misrepresentation. The trial court found the remaining claims, including the causes of action for defamation, unjust enrichment, and negligent misrepresentation, survived the Civ.R. 12(B)(6) motion.

{¶28} It is from the July 9, 2021 judgment entry that the City now appeals pursuant to R.C. 2744.02(C), which states, "An order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order."

## ASSIGNMENTS OF ERROR

{¶29} The City raises two Assignments of Error:

{¶30} "I. THE LOWER COURT IMPROPERLY DENIED THE BENEFIT OF IMMUNITY TO DEFENDANT/APPELLANT CITY OF DOVER.

{¶31} "II. THE LOWER COURT IMPROPERLY DENIED THE BENEFIT OF IMMUNITY TO DEFENDANT/APPELLANT DOUGLAS O'MEARA."

## ANALYSIS

### Standard of Review for Civ.R. 12(B)(6)

{¶32} The City argues in its two Assignments of Error that the trial court erred in denying its motion to dismiss Dover Chemical's claims of defamation, unjust enrichment, and negligent misrepresentation pursuant to Civ.R. 12(B)(6). Our standard of review on a Civil Rule 12(B) motion to dismiss is de novo. *Huntsman v. State*, 5th Dist. Stark No. 2016CA00206, 2017-Ohio-2622, 2017 WL 1710432, ¶ 20, citing *Greeley v. Miami Valley Maintenance Contractors Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990). A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and

tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey County Bd. of Commissioners*, 65 Ohio St.3d 545, 605 N.E.2d 378 (1992). Under a de novo analysis, we must accept all factual allegations of the complaint as true, and all reasonable inferences must be drawn in favor of the nonmoving party. *Byrd v. Faber*, 57 Ohio St.3d 56, 565 N.E.2d 584 (1991). In order to dismiss a complaint pursuant to Civil Rule 12(B)(6), it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle plaintiff to relief. *York v. Ohio State Highway Patrol*, 60 Ohio St.3d 143, 573 N.E.2d 1063 (1991).

**Political Subdivision Immunity**

{¶33} There is no dispute that the City of Dover is a political subdivision pursuant to R.C. 2744.01(F). R.C. 2744.02(A)(1) establishes governmental immunity for political subdivisions and their employees: "For purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

{¶34} Whether a political subdivision is entitled to this statutory immunity is a question of law for a court's determination. *M.F. by Karisma v. Perry Cnty. Children Services M.F.*, 5th Dist. Perry No. 19-CA-0003, 2019-Ohio-5435, 2019 WL 7369252, ¶ 30 citing *Henney v. Shelby City School Dist.*, 5th Dist. Richland No. 2005 CA 0064, 2006-Ohio-1382, ¶ 28, citing *Conley v. Shearer*, 64 Ohio St.3d 284, 291, 595 N.E.2d 862 (1992). A three-tiered analysis is required to determine whether a political subdivision is

immune from tort liability pursuant to R.C. Chapter 2744. *Gattrell v. Utica*, 2016-Ohio-792, 63 N.E.3d 461, ¶¶ 36-37 (5th Dist.) citing *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556–557, 733 N.E.2d 1141 (2000); *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 13–15. The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental or a proprietary function. *Greene Cty. Agricultural Society*, at 556–557, 733 N.E.2d 1141; R.C. 2744.02(A)(1).

{¶35} The immunity under the first tier, however, is not absolute. R.C. 2744.02(B); *Cater v. Cleveland*, 83 Ohio St.3d 24, 697 N.E.2d 610 (1998). "The second tier of the analysis requires a court to determine whether any of the five listed exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability." *Id.*

{¶36} Relevant to the instant case, R.C. 2744.02(B) states in pertinent part:

Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

* * *

(2) Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.

* * *

{¶37} If the political subdivision is liable under the second tier, the third tier of the analysis determines whether immunity can be revived because the political subdivision is entitled to a defense or qualified immunity under R.C. 2744.03(A). *Vasquez-Comer v. City of Toledo*, 6th Dist. Lucas No. L-18-1266, 2019-Ohio-5149, ¶ 9. R.C. 2744.03(A) states:

> In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
>
> (1) The political subdivision is immune from liability if the employee involved was engaged in the performance of a judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function.
>
> (2) The political subdivision is immune from liability if the conduct of the employee involved, other than negligent conduct, that gave rise to the claim of liability was required by law or authorized by law, or if the conduct of the employee involved that gave rise to the claim of liability was necessary or essential to the exercise of powers of the political subdivision or employee.
>
> (3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.
>
> * * *

R.C. 2744.03(A).

{¶38} An employee of a political subdivision is also entitled to the defense of immunity, with exceptions:

(6) In addition to any immunity or defense referred to in division (A)(7) of

this section and in circumstances not covered by that division or sections

3314.07 and 3746.24 of the Revised Code, the employee is immune from

liability unless one of the following applies:

(a) The employee's acts or omissions were manifestly outside the scope of

the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad

faith, or in a wanton or reckless manner;

R.C. 2744.03(A)(6).

{¶39} We now consider the City's argument that Dover Chemical failed to state a claim for unjust enrichment, negligent misrepresentation, and defamation through only the lens of political subdivision immunity further limited by the boundaries of Civ.R. 12(B)(6).

**Unjust Enrichment and Negligent Misrepresentation Claims Against the City**

{¶40} In its first Assignment of Error, the City argues the trial court erred in denying its Civ.R. 12(B)(6) motion to dismiss Dover Chemical's claims for unjust enrichment and negligent misrepresentation because the City is immune from the negligence claims pursuant to R.C. Chapter 2744. Pursuant to the limited standard of review under Civ.R. 12(B)(6), we find the trial court did not err and overrule the first Assignment of Error.

**Unjust Enrichment – Equitable or Legal?**

{¶41} We first examine Dover Chemical's claim for unjust enrichment. Unjust enrichment occurs when "a person has and retains money or benefits which in justice and in equity belong to another." *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 20. The purpose of an unjust enrichment claim is not to compensate the plaintiff for loss or damage suffered by the plaintiff, but to enable the plaintiff to recover the benefit he has conferred on the defendant under circumstances in which it would be unjust to allow the defendant to retain it. *Id.* at ¶ 21. Restitution is the common-law remedy for the unjust enrichment of one party at the expense of another. *Santos v. Ohio Bur. of Workers' Comp.*, 101 Ohio St.3d 74, 2004-Ohio-28, 801 N.E.2d 441, ¶ 11. To prevail on a claim for unjust enrichment, a plaintiff must demonstrate that: (1) he conferred a benefit upon the defendant, (2) the defendant had knowledge of the benefit, and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment. *Barrow v. Village of New Miami*, 12th Dist. No. CA2017-03-031, 2018-Ohio-217, 104 N.E.3d 814, 2018 WL 500170, ¶ 13 citing *RG Long & Assocs., Inc. v. Kiley*, 12th Dist. Warren No. CA2014-10-129, 2015-Ohio-2467, 2015 WL 3824365, ¶ 14.

{¶42} The City raised multiple arguments at the trial court level as the basis to dismiss the unjust enrichment claim, but in this appeal, we only consider the claim pursuant to the three-tiered sovereign immunity analysis. We start at the first tier and ask the question, does Dover Chemical's claim for unjust enrichment assert a claim for "damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision" as required by R.C. 2744.02(A)(1)?

{¶43} R.C. Chapter 2744 applies to tort actions for damages. *Barrow v. Village of New Miami*, 2018-Ohio-217, ¶ 16 citing *Cincinnati v. Harrison*, 1st Dist. Hamilton No. C-130195, 2014-Ohio-2844, ¶ 30; *LaBorde v. Gahanna*, 2015-Ohio-2047, 35 N.E.3d 55 (10th Dist.), ¶ 18. "Ohio courts have uniformly held that while sovereign immunity bars tort claims for money damages, it has no application in actions for equitable relief." *Barrow* at ¶ 16 quoting *Cincinnati* at ¶ 30. Thus, "where a political subdivision is not being subjected to a claim for money damages, the near absolute immunity of R.C. 2744.02(A -- the first tier of the [analysis] -- is not available." *Barrow* at ¶ 16 quoting *Cincinnati* at ¶ 29. Accordingly, accepting all factual allegations of the complaint as true and all reasonable inferences drawn in favor of Dover Chemical, we must determine if the relief sought by Dover Chemical constitutes equitable relief or a claim for money damages.

{¶44} In *Barrow v. Village of New Miami*, 2018-Ohio-217, 104 N.E.2d 814 (4th Dist.), the Fourth District Court of Appeals conducted a thorough and detailed analysis of an unjust enrichment claim to determine whether the relief sought by the plaintiffs was legal or equitable in nature after the defendant political subdivision claimed immunity under R.C. Chapter 2744. The court analyzed multiple Ohio Supreme Court decisions concerning unjust enrichment, the nature of the relief sought, and R.C. Chapter 2744 to guide its decision. For example, the court considered *Santos v. Ohio Bur. of Workers' Comp.*, 101 Ohio St.3d 74, 2004-Ohio-28, 801 N.E.2d 441, where the Ohio Supreme Court explained "whether restitution is 'legal or equitable depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought.'" *Santos*, at ¶ 13, quoting *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). The Court concluded:

Restitution is available as a *legal* remedy when a plaintiff cannot "assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him." Restitution is available as an *equitable* remedy "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." "Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."

(Citation omitted and emphasis sic.) *Barrow* at ¶ 23 quoting *Santos* at ¶ 13, quoting *Great–West Life* at 214, 122 S.Ct. 708. "A suit that seeks the return of specific funds wrongfully collected or held by the state is brought in equity." *Barrow* at ¶ 24 quoting *Santos* at ¶ 17.

{¶45} For contrast, the Fourth District Court of Appeals examined two Ohio Supreme Court decisions, *Cristino v. Ohio Bur. of Workers' Comp.*, 118 Ohio St.3d 151, 2008-Ohio-2013, 886 N.E.2d 857; and *Measles v. Indus. Comm.*, 128 Ohio St.3d 458, 2011-Ohio-1523, 946 N.E.2d 204, where the Supreme Court found if the unjust enrichment cause of action was a claim seeking to recover damages to compensate or substitute for a suffered loss or relating to a contract dispute, it was a legal claim of restitution. *Barrow* at ¶ 31.

{¶46} In *Cristino*, the plaintiff was a workers' compensation recipient who, pursuant to an agreement with the BWC, agreed to relinquish his statutory right to receive

periodic payments for permanent total disability ("PTD") until his death in exchange for a lump-sum payment of the present value of his PTD claim. Following his settlement with the BWC, the plaintiff filed a class-action lawsuit against the BWC alleging it had improperly calculated the present value of his PTD claim. The plaintiff sought full restitution of the difference between the amount the BWC represented was the present value of his PTD claim and the true present value. The BWC argued that the claim for restitution was a request for money damages. *Barrow* at ¶ 25. The Ohio Supreme Court found the claim was a legal, not equitable claim of restitution because the plaintiff was not seeking restitution of funds to which he was statutorily entitled; rather, the claim sought money due pursuant to the plaintiff's agreement with the BWC. *Barrow* at ¶ 26 citing *Cristino* at ¶ 12, 14. "A claim against the state for money due under a contract is not a claim of equitable restitution." *Cristino* at ¶ 11.

{¶47} Dover Chemical states the City was unjustly enriched by profits derived at Dover Chemical's expense when Dover Power purchased electricity from another source and resold that electricity to Dover Chemical in violation of the Ohio Constitution and at a rate over and above its costs for distribution to Dover Chemical. From the four corners of Dover Chemical's amended complaint and considering all inferences in favor of Dover Chemical, Dover Chemical does not seek restitution for money due under an agreement, settlement, or contract with the City. The amended complaint states a claim that Dover Chemical is seeking the recovery of the specific amount of profits that the City allegedly collected pursuant to its practice of purchasing electricity and reselling it to Dover Chemical at a higher rate. As the Ohio Supreme Court plainly held, "A suit that seeks the return of specific funds wrongfully collected or held by the state is brought in equity" and

"is consequently not barred by sovereign immunity." *Barrow* at ¶ 33 quoting *Santos* at ¶ 17; *Ohio Hosp. Assn.* v. Ohio Dept. of Human Services, 62 Ohio St.3d 97, 105, 579 N.E.2d 695 (1991).

### Negligent Misrepresentation is Negligence

{¶48} In its second argument, the City contends it is immune from Dover Chemical's claim of negligent misrepresentation. Dover Chemical alleges that in March 2019, the City represented that it was willing to negotiate in good faith for a more competitive rate for electrical services provided by Dover Power. Unbeknownst to Dover Chemical, the City had no intention of negotiating rates and was working to effectuate a rate increase. Dover Chemical claimed the false representations provided by the City caused Dover Chemical to delay efforts to transition to AEP, resulting in economic harm in the form of the costs of negotiating and overpayment for electric service from Dover Power.

{¶49} The elements of negligent misrepresentation are (1) one who, in the course of his or her business, profession, or employment, or in any other transaction in which he or she has a pecuniary interest; (2) supplies false information for the guidance of others in their business transactions; (3) is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information; and (4) if he or she fails to exercise reasonable care or competence in obtaining or communicating the information. *Martin v. Ohio State Univ. Found.*, 139 Ohio App.3d 89, 103–04, 742 N.E.2d 1198, 1209, 2000 WL 1528605 (10th Dist.2000) citing *Delman v. Cleveland Hts.*, 41 Ohio St.3d 1, 4, 534 N.E.2d 835, 837–838 (1989). While the elements of fraud and negligent misrepresentation are very similar, fraud is an intentional tort and negligent misrepresentation is a negligence

tort. *Johnson v. Church of the Open Door*, 179 Ohio App.3d 532, 539, 902 N.E.2d 1002 (9th Dist.2008) citing *Martin v. Ohio State Univ. Found.*, 139 Ohio App.3d 89, 104, 742 N.E.2d 1198 (10th Dist.2000).

{¶50} Because a negligent misrepresentation claim lies in negligence, it is therefore within the purview of R.C. Chapter 2744. For the claim of negligent misrepresentation, it is within the second tier of the analysis that the question of immunity lies. In the second tier, a political subdivision may lose its immunity if the exceptions of R.C. 2744.02(B)(1) through (5) apply.

{¶51} Dover Chemical argues that pursuant to the second tier, the exception of R.C. 2744.03(B)(2) applies to subject the City to liability: "Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." The City responds that the allegations in the negligent misrepresentation claim do not allege a proprietary function, therefore the exception to immunity does not apply.

{¶52} R.C. 2744.01(G) defines the meaning of "proprietary function." It states:

(G)(1) "Proprietary function" means a function of a political subdivision that is specified in division (G)(2) of this section or that satisfies both of the following:

(a) The function is not one described in division (C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section;

(b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons.

(2) A "proprietary function" includes, but is not limited to, the following:

* * *

(c) The establishment, maintenance, and operation of a utility, including, but not limited to, a light, gas, power, or heat plant, a railroad, a busline or other transit company, an airport, and a municipal corporation water supply system;

{¶53} Dover Chemical stated in its amended complaint that its negligent misrepresentation claim was based on the electrical rate negotiations between it and the City. The amended complaint and attachments to the amended complaint demonstrated that the City negotiated the provision of electricity by Dover Power, the equipment and maintenance provided by Dover Power, and rates Dover Chemical would pay to the City for the purchase of electricity from the City's power utility. The City has not pointed to any statutory or common law definition of "operation of a utility" to show that "operation" does not encompass the negotiation and/or the establishment of the electrical rates for the utility's customers. Considering the four corners of the amended complaint and the allegations therein in a light most favorable to Dover Chemical, we cannot under this limited standard of review say that Dover Chemical's claim for negligent misrepresentation does not implicate a proprietary function in the operation of a utility.

{¶54} The City counters that even if an exception to immunity applies under R.C. 2744.03(B)(2), immunity was reinstated based on the defense to liability set forth in R.C. 2744.03(A)(3), which states:

> The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.

{¶55} The plaintiff's burden in responding to a Civ.R. 12(B)(6) motion based on political subdivision immunity was discussed by the Eighth District Court of Appeals as thus,

> "In Ohio, a notice-pleading state, the plaintiff need not prove his or her case at the pleading stage. * * * Thus, a plaintiff need not affirmatively dispose of the immunity question altogether at the pleading stage. * * * Requiring a plaintiff to affirmatively demonstrate an exception to immunity at this stage would be tantamount to requiring the plaintiff to overcome a motion for summary judgment at the pleading stage. * * * Instead, a plaintiff must merely allege a set of facts that, if proven, would plausibly allow for recovery."

*Windsor Realty & Mgt., Inc. v. Northeast Ohio Regional Sewer Dist.*, 8th Dist. No. 103635, 2016-Ohio-4865, 68 N.E.3d 327, 2016 WL 3632503, ¶ 37 quoting *Srokowski v. Shay*, 8th Dist. Cuyahoga No. 100739, 2014-Ohio-3145, 2014 WL 3537870, ¶ 14, quoting *Scott v.*

*Columbus Dept. of Pub. Utils.*, 192 Ohio App.3d 465, 2011-Ohio-677, 949 N.E.2d 552, ¶ 8 (10th Dist.).

{¶56} At this stage of the proceedings, our analysis is limited to the facts alleged in the amended complaint. Construing all material allegations in the amended complaint (along with all reasonable inferences that could be drawn therefrom) in favor of Dover Chemical, we cannot state that there is no set of facts consistent with the amended complaint that would allow Dover Chemical to prove an exception to immunity from liability on its negligence claim against the City or that a defense to liability would necessarily apply to reinstate immunity even if Dover Chemical were successful in establishing an exception to immunity under R.C. 2744.02(B)(2).

{¶57} The first Assignment of Error is overruled.

### Defamation Claim against the Law Director

{¶58} In its second Assignment of Error, the City argues the claim of defamation against the Law Director should be dismissed pursuant to Civ.R. 12(B)(6) because the tort is barred by political subdivision immunity. We agree.

{¶59} There are two types of defamation, defamation per se and defamation per quod. Defamation per quod refers to a communication that is capable of being interpreted as defamatory, i.e., it must be determined by the interpretation of the listener, through innuendo, as being either innocent or damaging. *Northeast Ohio Elite Gymnastics Training Center, Inc. v. Osborne*, 183 Ohio App.3d 104, 2009–Ohio–2612, 916 N.E.2d 484 (9th Dist.). For defamation per quod, special damages must be pled and proven. *Id*. Special damages are damages of such a nature that they do not follow as a necessary consequence of the complained injury. *Id*.

{¶60} In this case, Dover Chemical has not alleged any special damages or harm in its amended complaint.

{¶61} For a communication to be defamatory per se, it must be actionable upon the very words spoken without regard to the interpretation of the listener, i.e., it is actionable on its face. Hurst v. Moore, 5th Dist. Licking No. 17-CA-4, 2017-Ohio-7238, 2017 WL 3500412, ¶ 23 citing *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 651 N.E.2d 1283 (1995). A statement is defamatory per se if, on its face, it reflects upon his character in such a manner that would cause him to be ridiculed, hated, or held in contempt, or in a manner that will injure him in his trade or profession. *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 651 N.E.2d 1283 (1995); *Croskey v. Universal Health Services*, 5th Dist. Richland No. 09 CA 37, 2009–Ohio–5951.

{¶62} To state a claim for defamation, Dover Chemical must allege:

(1) a false statement of fact was made about the plaintiff; (2) the statement was defamatory; (3) the statement was published; (4) the plaintiff suffered injury as a proximate result of the publication and (5) the defendant acted with the requisite degree of fault in publishing the statement. *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832. A defamatory statement is the unprivileged publication of false and defamatory matter that tends to reflect injuriously on a person's reputation, or exposes a person to " 'public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his trade, business, or

profession.' " *A & B – Abell Elevator v. Columbus/Cent. Ohio Bldg. & Constr.*

*Trades Council*, 73 Ohio St.3d 1, 651 N.E.2d 1283 (1995).

*Gemperline v. Franano*, 5th Dist. Delaware No. 21 CAE 01 0002, 2021-Ohio-2394, 2021

WL 2947744, ¶ 33 citing *Jamison v. Galena*, 5th Dist. No. 15 CAE 01 007, 2015-Ohio-

2845, 38 N.E.3d 1176, ¶ 52.

{¶63} Individual employees of a political subdivision are immune from civil actions

to recover damages for "injury, death, or loss to person or property allegedly caused by

any act or omission in connection with a governmental or proprietary function." R.C.

2744.02(A)(1). An exception to individual immunity exists, as Dover Chemical argues in

this appeal, if it can be shown that (a) the employee's acts or omissions were manifestly

outside the scope of the employee's employment or official responsibilities or (b) the

employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or

reckless manner. *See* R.C. 2744.03(A)(6)(a) and (b). In its amended complaint, Dover

Chemical claimed the Law Director's public statements about Dover Chemical were done

with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶64} The qualified immunity provided to a political subdivision employee under

R.C. 2744.03(A)(6) is "in addition to any immunity or defense referred to in division (A)(7)

of this section and in circumstances not covered by that division." R.C. 2744.03(A)(7)

preserves common law immunity for a "political subdivision, and an employee who is a

county prosecuting attorney, city director of law, village solicitor, or similar chief legal

officer of a political subdivision, an assistant to such person, or a judge of a court of this

state is entitled to any defense or immunity available at common law or established by

the Revised Code." R.C. 2744.03(A)(7); *Friga v. E. Cleveland*, 8th Dist. Cuyahoga No. 88262, 2007-Ohio-1716, 2007 WL 1084013, ¶ 11.

{¶65} To support its claim for defamation by the Law Director, Dover Chemical referred to three statements made by the Law Director in regards to Dover Chemical: (1) the May 26, 2020 City Council meeting minutes where the Law Director presented his findings as to the City's provision of electrical services to Dover Chemical and his recommendation to City Council to enact an ordinance to set electrical rates in compliance with City regulations; (2) a draft of Emergency Ordinance 29-20 prepared by the Law Director pursuant to the May 26, 2020 City Council meeting; and (3) a September 10, 2020 news media article that reported the Law Director's letter to City Council regarding the provision of electrical services to Dover Chemical.

{¶66} Reviewing the allegations in the amended complaint in favor of Dover Chemical, we find it appears beyond doubt that Dover Chemical can prove no set of facts in support of its defamation claim against the Law Director. The three statements by the Law Director regarding Dover Chemical were the Law Director's communications to City Council in his official capacity as the city law director. The Law Director's legal opinion is immune from liability under R.C. 2744.03(A)(7), which grants immunity to a city law director to the extent that the law director is "entitled to any defense or immunity available at common law or established by the Revised Code." The Law Director's legal opinion is absolutely privileged because it was "a communication made by the law director of a village or municipality in his official capacity[.]" *McKee v. McCann*, 8th Dist. No. 104956, 2017-Ohio-7181, 95 N.E.3d 1079, 2017 WL 3433107, ¶ 39 quoting *Flynn v. Relic*, 8th Dist. Cuyahoga No. 41404, 1980 WL 355035, *4 (June 26, 1980).

{¶67} Once absolute immunity has been established under R.C. 2744.03(A)(7), it cannot be defeated by application of the "malicious purpose, bad faith" qualified immunity provisions of R.C. 2744.03(A)(6). *Moore v. Cleveland*, 8th Dist. Cuyahoga No. 100069, 2014-Ohio-1426, 2014 WL 1327910, ¶ 22 citing *Jopek v. Cleveland*, 8th Dist. Cuyahoga No. 93793, 2010–Ohio–2356, ¶ 36.

{¶68} Construing all material allegations in the amended complaint (along with all reasonable inferences that could be drawn therefrom) in favor of Dover Chemical, we find there is no set of facts consistent with the amended complaint that would allow Dover Chemical to prove an exception to immunity from liability on its defamation claim against the Law Director.

{¶69} The second Assignment of Error is sustained.

## CONCLUSION

{¶70} The judgment of the Tuscarawas County Court of Common Pleas is affirmed in part and reversed in part. The matter is remanded to the Tuscarawas County Court of Common Pleas for further proceedings consistent with this Opinion and law.

By: Delaney, J.,

Wise, Earle, P.J. and

Wise, John, J., concur.